No. 44,304

DON E. PRATT, *Appellee*, v. FRANCIS WILLIAM GRIESE, *Appellant*.

(409 P. 2d 777)

Opinion filed January 22, 1966.

*F. F. Wasinger*, of Hays, was on the brief for the appellant.
*Delmas L. Haney*, of Hays, was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Plaintiff-appellee brought this action to declare and protect by way of injunction an easement for railroad purposes over land owned by defendant-appellant. Trial to the court resulted in judgment for plaintiff from which defendant appeals.

The pertinent facts are not in dispute. The property in question is an easement over part of a strip of land connecting a 1753 acre

tract comprising the former Hays-Walker Army Airfield with the main line of the Union Pacific Railroad near Walker, Kansas. The part here involved is 11.97 acres, the easement over which was acquired by the United States government by condemnation proceedings initiated in 1943. Defendant owned the property then and still owns the surrounding land and the servient estate.

The original taking of the right of way was in a separate suit in eminent domain filed in the United States District Court for the District of Kansas, judgment in which recited in part:

"FIRST: That the United States of America is entitled to acquire property and interest in property by eminent domain for the purposes as set out and prayed in said petition.

"SECOND: That a petition in condemnation was filed at the request of the Secretary of War, the authority empowered by law to acquire the interest in the lands described in said petition, and also under authority of the Attorney General of the United States.

"THIRD: That said petition and Declaration of Taking state the authority under which and the public use for which the interest in said lands was taken; that said Declaration of Taking was signed by the Secretary of War, who was, and is the person duly authorized and empowered by law to acquire the interest in said land described in the petition for, on behalf, and in the name of the United States of America, for the purposes and uses of providing for a railroad spur track to a military airfield and for related military purposes in connection with the establishment of the Hays-Walker Army Airfield, Kansas, and for the uses mentioned in the Declaration of Taking, as authorized by law; and that the Attorney General of the United States is the person authorized by law to direct the institution of such condemnation proceedings;

"FOURTH: That a proper description of the lands in which said interest was taken sufficient for identification thereof, is set out in said Declaration of Taking;

"FIFTH: That said Declaration of Taking contains a statement of the estate or interest in the said lands taken for said public use;

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"IT IS THEREFORE ADJUDGED, ORDERED AND DECREED, That a perpetual easement for the location, construction, operation and maintenance of a railroad spur track in, over, upon and across the lands hereinafter described vested in the United States of America upon the filing of said Declaration of Taking and the depositing in the registry of this court of the aforesaid estimated total compensation, which lands are described as follows, the same being situate in the County of Ellis, State of Kansas and aggregating 11.97 acres more or less viz:

"TRACT NO. 3.

"DESCRIPTION:

"A perpetual easement for the location, construction, operation and maintenance of a railroad spur track, in, on, over and across the parcels of land in

the NE/4 of Section 4, more particularly described as follows: [Description] . . .

"NAME AND ADDRESS OF PURPORTED OWNER:

> "Francis W. Griese,
> "c/o Mrs. Francis W. Griese,
> "Delphos, Kansas.

"That said interest in said lands, together with all buildings and improvements thereon and appurtenances thereunto belonging is deemed to have been condemned and taken for the use of the United States of America and the right to just compensation for the interest taken, upon the filing of the Declaration of Taking and making of the deposit, vested in the persons entitled thereto and the amount of compensation as to the interest in the lands involved in this condemnation proceeding shall be ascertained and awarded in this proceeding and establishment by judgment herein pursuant to law. . . ."

From the final judgment of confirmation it appears the sum of $98.79 was paid for the easement over Tract No. 3. The United States fenced the right of way, placed chat and ballast on it, laid track and operated a railroad over it.

The United States discontinued the Army Airfield in 1945, and in 1946 and 1947 it removed the rails and ties used in the railroad right of way in question. The fence was not thereafter maintained in a state of repair. In March of 1959 plaintiff purchased the airfield from the government, receiving a quitclaim deed from the government which in addition to the airfield also conveyed to him the easement in question, the latter being described as follows:

"Together with a perpetual easement for the location, construction, operation, and maintenance of a railroad spur track in, on, over and across the following described parcels of land: [Description of Tract No. 3] being a part of the same property acquired by the UNITED STATES OF AMERICA by condemnation and by purchase from various owners."

Plaintiff entered into possession of the airfield, using it for commercial purposes, and he thereafter began systematically removing the ballast from the right of way and trucking it away. At the hearing plaintiff testified he had considered plans for using the right of way in the construction of a railroad.

The district court upon joinder of issues made findings of fact in substance that there had been no express release of the easement by either the United States or by plaintiff and that there had been no termination of the easement by either nonuse or abandonment on the part of either.

Defendant now urges the sole proposition that the court erred in finding that the United States had not abandoned the easement,

basing this contention on the facts that the government discontinued and abandoned the airfield in 1945, then removed the track from the right of way in 1946 and 1947, and in 1959 sold the airfield, and defendant claims that all of these acts constitute an abandonment of the right of way for the purposes for which it had been taken. Hence we are not concerned with the termination of an easement in any other manner than by abandonment, and more precisely here, abandonment by the original holder, the federal government.

However created, an easement for a railroad right of way is limited by the use for which the easement is acquired, and when that use is abandoned the easement is terminated and the property reverts to the owner of the servient estate. (*Abercrombie v. Simmons*, 71 Kan. 538, 81 Pac. 208.) If defendant's contention be correct then he must prevail in this action inasmuch as the title to the right of way would revert to him. (See, also, *K. C. Rly. Co. v. Allen*, 22 Kan. 285, 31 Am. Rep. 190.)

First it may be said, mere nonuse, for a limited time, of land condemned for public purposes, unless accompanied by failure to pay compensation, does not constitute abandonment (*Matlack v. City of Wichita*, 195 Kan. 484, 407 P. 2d 510). However, as other elements are involved in this case is would serve no purpose to consider whether an abandonment resulted solely from mere nonuse for the particular duration here shown.

In 74 C. J. S., Railroads, § 117, pp. 541-542, it is stated:

"Whether a right of way has been abandoned by a railroad company is largely a question of intent, and it is generally held that in order to constitute an abandonment there must be an intent to relinquish, together with external acts by which the intent is carried into effect."

A rule found in the overwhelming majority of cases on the subject is that evidence of an intention to abandon an easement for a roadroad right of way may be found in the deliberate removal of tracks rendering the operation of a railroad impossible. Some of those cases may be found in the annotation at 95 A. L. R. 2d § 5, p. 482, *et seq.* Illustrative is *MA. & PA. RR. CO. v. MER.-SAFE, ETC., CO.*, 224 Md. 34, 166 A. 2d 247, 95 A. L. R. 2d 463 (1960), wherein a right of way was used for railroad purposes until November of 1958 when the company ceased all railroad operations over the land and removed the rails and ties therefrom. This was the only evidence of abandonment. The court said:

"The next question is whether the removal of the rails and ties from the easement constituted an abandonment of it. We think it did.

"The general rule is that the right and title to a *mere* easement in land acquired by a *quasi*-public corporation, either by purchase, condemnation or prescription, for a public purpose is dependent upon the continued use of the property for that purpose, and when such public use is abandoned the right to hold the land ceases, and the property reverts to its original owner or his successors in title. See *Canton Co. v. Baltimore & O. R. Co.*, 99 Md. 202, 57 Atl. 637 (1904), where it was said at p. 218 (quoting in part from *Vogler v. Geiss*, 51 Md. 407 [1879]):

" ' "A cesser of the use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time." And this seems to be in accordance with authority as well as reason.' " (p. 39.)

Other conduct may be indicative of abandonment. In the oft-cited *Abercrombie* case, wherein a railroad company failed to construct a railroad on a right of way obtained by it and later by deed conveyed the right of way to plaintiff, a private individual, the court, in discussing the original grant, said:

"Now, as we have seen, the deed and those things to which we may look in its interpretation plainly show that the strip was sold on the one part, and purchased on the other, as and for a right of way for a railroad. This use, being within the contemplation of the parties, is to be considered as an element in the contract, and limits the interest that the railroad acquired. It took the strip for a specific purpose, and could hold it so long as it was devoted to that purpose. Whether the right of way purchased should be designated as an easement or as a qualified or determinable fee may not be very important. A right of way, although commonly designated as an easement, is an interest in land of a special and exclusive nature. . . .

"Whatever its name, the interest was taken for use as a right of way, it was limited to that use, and must revert when the use is abandoned. . . .

"The conclusion is that the plaintiff acquired no interest in these lands by the attempted conveyance by the railroad company to him. . . ." pp. 545, 546, 547.)

In *Mammoth Cave Nat. Pk. Ass'n v. State High. Com.*, 261 Ky. 769, 88 S. W. 2d 931, a railway company operated its railroad on the right of way in question until June, 1931; it removed the track later that year and in 1935 attempted to convey the right of way to an association for the purposes of a national park. It was held by these acts to have abandoned the right of way.

The easement in the case at bar was for a specific purpose. That purpose was stated in the official declaration of taking by the Secretary of War, referred to in the judgment, as follows:

"(b) The *public uses* for which said lands are taken are as follows: The said lands are necessary adequately to provide for a *railroad spur track* to a

*military airfield* and for *related military purposes.* The said lands have been selected by me for acquisition by the United States for use in connection with the *establishment of the Hays-Walker Army Airfield, Kansas* and for such other uses as may be authorized by Congress or by Executive Order, and are required for immediate use." (Emphasis supplied.)

This purpose is reiterated throughout the entire condemnation proceedings, *e. g.,* the judgment stated:

". . . the interest in said land described in the petition for, on behalf, and in the name of the United States of America, for the purposes and uses of providing for a railroad spur track to a military airfield and for related military purposes in connection with the establishment of the Hays-Walker Army Airfield, Kansas, and for the uses mentioned in the Declaration of Taking, as authorized by law. . . ."

From the foregoing, it is clear that from the undisputed evidence an abandonment of the easement must be presumed. Chronologically reviewed, it showed that the government discontinued the military airfield, removed the tracks from the right of way and finally conveyed the airfield to a private individual.

These are acts of a decisive character. By them the government has conclusively rendered it impossible for the easement to be used for the purpose for which it was taken, viz, any military purpose, thereby constituting an abandonment of the easement and causing defendant's land to be relieved of it. As stated in *Abercrombie,* supra, ". . . the interest was taken for use as a right of way, it was limited to that use, and must revert when the use is abandoned . . ." (p. 546) and the plaintiff acquired no interest by the purported conveyance of the right of way by the government to him.

The judgment of the district court is reversed with directions to enter judgment for defendant in accordance with the views herein expressed.

APPROVED BY THE COURT.