(99 P.3d 1135)
No. 91,752

RIVERSIDE DRAINAGE DISTRICT OF SEDGWICK COUNTY, KANSAS, *Appellant/Cross-appellee*, v. JACK R. HUNT AND CORNERSTONE HOMES, L.L.C., *Appellees/Cross-appellants*.

Opinion filed October 29, 2004.

*Edgar Wm. Dwire*, of Malone, Dwire and Jones, of Wichita, for appellant/cross-appellee.

*John R. Hamilton* and *David E. Watson*, of Hamilton, Laughlin, Barker, Johnson & Watson, of Topeka, for appellees/cross-appellants.

Before RULON, C.J., MCANANY, J., and BRAZIL, S.J.

MCANANY, J.: Riverside Drainage District of Sedgwick County, Kansas (drainage district), appeals the district court's denial of its petition for declaratory judgment and the order quieting title to the easement property in Jack R. Hunt. Hunt cross-appeals the district court's conclusion that Hunt could not acquire the subject property by adverse possession. We affirm the district court's ruling on the issue of adverse possession, reverse its ruling on the issue of abandonment, and remand the case for the entry of judgment in favor of the drainage district on its petition.

*Background Facts*

In 1964, the Seneca Construction Company (Seneca) platted Silver Spur Third Addition which consisted of two lots and a 125-foot drainage right-of-way dedicated to the public immediately north of the two lots. The plat also provided for a flood control maintenance access easement which consisted of the north 15 feet of the two lots. The plat was approved by the Board of City Commissioners of the City of Wichita and by the Board of County Commissioners of Sedgwick County in 1965. In 1972, Seneca's president obtained a building permit to construct a mobile home sales lot on Lot 1. In about 1974, Seneca installed a fence along the southern border of the drainage right-of-way. The fence encroached upon the easement.

In 1996, Hunt purchased Lot 1 from Seneca without first having the property surveyed. Seneca gave Hunt a warranty deed that conveyed the property subject to easements and restrictions of record. Hunt believed the north boundary of the land was the existing fence line, which included the maintenance access easement area. Hunt acknowledged that mobile homes, flagpoles, light poles, and two signs were located within the easement area. He testified that while the drainage district performed various maintenance activi-

ties on the drainage ditch in the past, it never expressed a desire or need to use the easement.

Glenn Shottler, the president of the drainage district's board, testified that he became aware of the easement in 2001 after the drainage district completed a survey. The survey disclosed that some of Hunt's property, including the fence, encroached on the drainage right-of-way. Hunt removed some of the property and the fence from the right-of-way. The drainage district then requested Hunt to remove his other property from the easement area, but he refused.

In 2002, the drainage district filed a declaratory judgment action seeking an order requiring Hunt to remove his property from the easement area. The district court found that while the drainage district's land was not subject to adverse possession, its actions in not using the easement since 1974 and permitting the area to be fenced off constituted an abandonment of the easement. The district court denied the drainage district's petition and ordered title to the easement area to be quieted in the name of Hunt. The drainage district appeals. Hunt cross-appeals the district court's ruling that Hunt could not obtain the land by adverse possession.

*Standard of Review*

Our task is to determine whether the district court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the district court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). Our review of the district court's conclusions of law is unlimited. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.3d 214 (2004). We do not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact. *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 775, 69 P.3d 1087 (2003).

*Abandonment — The Drainage District's Appeal*

Preliminarily, we note that the drainage district now claims that the easement was actually owned by the City of Wichita and that

there is no evidence to indicate that the City intended to abandon the easement. We will not consider this. This was not an issue identified in the pretrial order. A pretrial order "controls the course of the action unless modified to prevent manifest injustice. [Citation omitted.] An issue or claim for relief that is not contained in the pretrial order should not be entertained by the trial court. [Citation omitted.]" *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 18-19, 61 P.3d 68 (2002). The trial court did not address this issue in its ruling. Generally, issues not raised before the trial court cannot be presented on appeal. *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 268, 62 P.3d 247 (2003). Further, this issue does not fall within the exceptions to the general rule. See *Smith v. Yell Bell Taxi, Inc.*, 276 Kan. 305, 311, 75 P.3d 1222 (2003).

The general rule regarding abandonment of property is set forth in *Botkin v. Kickapoo, Inc.*, 211 Kan. 107, 109-10, 505 P.2d 749 (1973):

"The law respecting abandonment as applied to property and property rights is well established. Generally, abandonment is the act of intentionally relinquishing a known right absolutely and without reference to any particular person or for any particular purpose. Abandoned property is that to which the owner has voluntarily relinquished all right, title, claim and possession, with the intention of terminating his ownership, but without vesting it in any other person and with the intention of not reclaiming future possession or resuming its ownership, possession or enjoyment. In order to establish an abandonment of property, actual relinquishment accompanied by intention to abandon must be shown. The primary elements are the intention to abandon and the external act by which that intention is carried into effect. Although an abandonment may arise from a single act or from a series of acts the intent to abandon and the act of abandonment must conjoin and operate together, or in the very nature of things there can be no abandonment. The intention to abandon is considered the first and paramount inquiry, and actual intent to abandon must be shown; it is not enough that the owner's acts give reasonable cause to others to believe that the property has been abandoned. Mere relinquishment of the possession of a thing is not an abandonment in a legal sense, for such an act is not wholly inconsistent with the idea of continuing ownership; the act of abandonment must be an overt act or some failure to act which carries the implication that the owner neither claims nor retains any interest in the subject matter of the abandonment. It is not necessary to prove intention to abandon by express declarations or by other direct evidence; intent to abandon property or rights in property is to be determined from all the

surrounding facts and circumstances. It may be inferred from the acts and conduct of the owner and from the nature and situation of the property. Mere nonuse of property, lapse of time without claiming or using property, or the temporary absence of the owner, unaccompanied by any other evidence showing intention, generally are not enough to constitute an abandonment. However, such facts are competent evidence of an intent to abandon and as such are entitled to weight when considered with other circumstances. [Citations omitted.]"

The drainage district claims, however, that a different rule applies when the land is an easement dedicated for public use. When land is dedicated for a specific purpose, " 'neither the legislature, a municipality, or its successor, nor the general public has any power to use the property for any other purpose than the one designated . . . .' [Citation omitted.]" *The State, ex rel., v. City of Manhattan*, 115 Kan. 794, 795, 225 Pac. 85 (1924) (quoting 18 C.J. [Dedication] 127, § 167). The court in *City of Manhattan* went on to state:

"Inasmuch as there are three parties interested in every dedication—the dedicator and his representative, the general public, and the property owners with special interests, such as owners of lots abutting on streets—no one of them without the consent of the others can change or destroy the use. [Citation omitted.]" 115 Kan. at 795.

The drainage district argues that the easement in question was dedicated for a public use and that Hunt cannot unilaterally change or destroy the use. The drainage district relies upon *Matlack v. City of Wichita*, 195 Kan. 484, 407 P.2d 510 (1965), in which the City acquired property through condemnation for street purposes. A strip of the condemned land was not used and was unoccupied for over 10 years and the plaintiff, who purchased the property, claimed that the City lost the easement by not using it for its intended purposes. The court stated:

"An easement on land dedicated to or condemned for a public use does not revert to the fee owner unless its use for the dedicated or condemned purpose has become impossible, or so highly improbable as to be practically impossible. [Citation omitted.]" 195 Kan. at 486.

The drainage district argues that the purpose for which its maintenance easement was dedicated has not become impossible or so highly improbable as to be practically impossible. The purpose of

the easement is to facilitate maintenance of the existing drainage ditch. The drainage ditch exists and will need maintenance from time to time. Thus, the drainage district argues, the district court erred in finding that it abandoned the easement.

Hunt relies on *Pratt v. Griese*, 196 Kan. 182, 409 P.2d 777 (1966), in which the federal government condemned an easement in 1943 during World War II to construct and operate a railroad line to an airfield. Tracks were laid and used for rail access to the airfield. In 1945 at the end of the war, the airfield was shut down, the tracks were removed, and the airfield was eventually sold. In finding that the federal government had abandoned its easement, our Supreme Court held that "[h]owever created, an easement for a railroad right of way is limited by the use for which the easement is acquired, and when that use is abandoned the easement is terminated and the property reverts to the owner of the servient estate. [Citation omitted.]" 196 Kan. at 185. The court went on to state:

" 'The general rule is that the right and title to a *mere* easement in land acquired by a *quasi*-public corporation, either by purchase, condemnation or prescription, for a public purpose is dependent upon the continued use of the property for that purpose, and when such public use is abandoned the right to hold the land ceases, and the property reverts to its original owner or his successors in title. See *Canton Co. v. Baltimore & O. R. Co.*, 99 Md. 202, 57 Atl. 637 (1904), where it was said at p. 218 (quoting in part from *Vogler v. Geiss*, 51 Md. 407 [1879]):

" ' " 'A cesser of the use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time.' " ' " *Pratt*, 196 Kan. at 186 (quoting *MA. & PA. RR. CO. v. MER.-SAFE, ETC., CO.*, 224 Md. 34, 39, 166 A. 2d 247 [1960]).

Of particular note in *Pratt* is the specific finding that the government's acts "conclusively rendered it impossible for the easement to be used for the purpose for which it was taken, viz., any military purpose, thereby constituting an abandonment of the easement and causing defendant's land to be relieved of it." 196 Kan. at 187. This is consistent with the court's reasoning in *Matlack*. Accordingly, Hunt was required to satisfy the "impossible, or so highly improbable as to be practically impossible" rule of *Matlack* in order to prevail. See 195 Kan. at 486. This he failed to do.

Hunt's reliance on the unpublished Court of Appeals opinion in *Riverside Drainage Dist. of Sedgwick County v. Wichita Boeing Employees Assoc.*, No. 82,806, opinion filed June 2, 2000, is misplaced. In that case the court used the more general abandonment principles in finding an abandonment without consideration of the rules set forth in *Matlack*. There is no indication that the parties raised *Matlack* at trial. Supreme Court Rule 7.04(f)(2)(i) (2003 Kan. Ct. R. Annot. 48) states that unpublished opinions "are not binding precedents, except under the doctrines of law of the case, res judicata, and collateral estoppel." Supreme Court Rule 7.04(f)(2)(ii) (2003 Kan. Ct. R. Annot. 48) further states that unpublished opinions are not favored for citation, but they "may be cited if they have persuasive value with respect to a material issue not addressed in a published opinion of a Kansas appellate court and they would assist the court in its disposition." Since *Matlack* is a published opinion, its reasoning applies.

The district court erred in finding that the drainage district had abandoned the easement. In oral argument, the drainage district concedes that in order to preserve its easement Hunt need not be required to remove from the easement area the existing pavement or underground utility lines. Their presence will not interfere with the drainage district's future use of the easement area. Further, Hunt may continue to park vehicles or mobile homes on the easement area, so long as they can be moved whenever the drainage district needs access to the easement area to maintain the drainage ditch.

*Adverse Possession — Hunt's Cross-appeal*

Hunt's cross-appeal challenges the district court's determination that since the drainage district is a quasi-municipal corporation, its property is not subject to adverse possession by an individual or private entity.

In *Gauger v. State*, 249 Kan. 86, 92, 815 P.2d 501 (1991), our Supreme Court reaffirmed the rule that "[r]ights cannot be acquired in public lands by adverse possession or any statute of limitation. [Citations omitted.]" Hunt, however, points to *Wichita Boeing Employees Assoc.* for support that the rule in *Gauger* does

not apply to easements. The court found in *Wichita Boeing Employees Assoc.* that the association could claim the land by adverse possession after the drainage district abandoned the easement and title reverted to the fee owner. These are not our circumstances. The drainage district did not abandon its easement so as to make it subject to adverse possession against the private property owner to whom it reverted. Hence, *Wichita Boeing Employees Assoc.* does not apply. The rule in *Gauger* stands: Hunt could not acquire the drainage district's maintenance easement by adverse possession.

Finally, Hunt argues that a new boundary line was established by agreement or custom of the parties, as was the case in *Moore v. Bayless*, 215 Kan. 297, 524 P.2d 721 (1974). In *Moore*, the court stated:

"[W]here parties by mutual agreement fix a boundary line between their properties, acquiesce in the line so fixed and thereafter occupy their properties according to the line agreed upon, it must be considered as the true boundary line between them and will be binding upon the parties and their grantees. The line becomes the true dividing line between the lands in question by virtue of such an agreement, even though a subsequent survey should establish a different boundary line. [Citations omitted.]" 215 Kan. at 300.

The boundary line between Hunt's land and the drainage right-of-way is not in dispute. When the drainage district's survey of the property disclosed that the fence encroached on the drainage right-of-way, Hunt removed the fence from the right-of-way. This suit arose when Hunt refused to remove his other property from the easement area. Hunt testified that he believed the north boundary of the land was the existing fence line, which included the maintenance access easement area. In truth, Hunt owns the property to its northern boundary, but it is subject to the maintenance easement. There is no dispute as to the dimensions or location of the maintenance easement. It is the very existence of the easement that is in dispute, not its boundary. The reasoning in *Moore* does not apply.

Affirmed in part, reversed in part, and remanded with directions for the entry of a declaratory judgment consistent with this opinion.