EDMUND B. ADDISON vs. ANDREW HACK—*December*, 1844.

In an action relating to lands, if the defendant does not take defence or warrant, the plaintiff is under no obligation to ask for a warrant to locate his land, or any of the matters in controversy, between the parties.

In such case, without plots, he may read his title papers in evidence; prove his possessions under them; and show by oral, and other testimony, the injury he complains of, and for which he seeks indemnity.

In an action for damages, for diverting the course of a stream from its natural channel, on the plaintiff's land, the defendant may show, that the diversion was made on his lands above those of the plaintiff, and that it was rather a benefit, than an injury to the plaintiff; or that it was made in virtue of a verbal agreement between plaintiff and defendant, that the latter might make the diversion, for the purpose of working a mill to be erected by the defendant on his own land, if the defendant would allow the plaintiff the use of a road through the defendant's land, and the execution of such agreement, or that the plaintiff entered into such a contract with the defendant, conferring the privilege, with a fraudulent design, and for the purpose, of extorting money from him.

Such evidence is admissible in mitigation of damages; and for the purpose of showing that the defendant was not a trespasser, *ab initio*, for continuing the diversion after a countermand of his authority by the plaintiff; or that he could not be made responsible in damages for acts done upon his own land, with the verbal permission and authority of the plaintiff.

The maxim, "*volenti non fit injuria*," illustrated.

Where one party authorises another to divert the channel of a stream, flowing through the lands of both, by means of a license which is countermanda-

Addison *vs.* Hack.—1844.

ble in its nature, and the authority is exercised as granted, the party who has the power of countermand, can only be restored to his rights, by doing justice to the other, and tendering him the expense which he has incurred under the license.

Where the plaintiff verbally agreed to abandon the use of a stream of water in the manner in which it had been accustomed to flow on his land, and the abandonment was consummated by the execution of his license, from that moment, his right to the use of the water, as it formerly flowed in its natural channel, became extinct; and it was no longer appurtenant to his land.

Such license conveys no estate, interest, or use in the land; is not within our registry acts; nor calculated to mislead purchasers.

A prominent object of our enrolment laws is the protection of purchasers.

A grant, not acknowledged, nor recorded, of a power to divert the course of a stream, which flowed through the grantor's land, but which power *had not been executed*, would not be a bar to a subsequent *bona fide* purchaser, for a valuable consideration, without notice, claiming the water right naturally incident to the lands he had purchased.   To interpose such a bar, in such a case, the same conformity to the registry laws is necessary, as if land were the subject of the grant.

APPEAL from *Baltimore* County Court.

This was an action *upon the case* brought to the April term, 1841, of said court, by the appellee, against the appellant, to recover damages for diverting a rivulet out of its ancient channel, through the land of the plaintiff, whereby the plaintiff was deprived of the use, &c.   The defendant pleaded *non cul.*, on which issue was joined.

1ST. EXCEPTION. At the trial of this cause, the plaintiff, to support the issue on his part, read in evidence to the jury, subject to exceptions, a patent dated 10th May 1754, for a tract of land called "*Soldiers Delight*," and also a patent for another tract of land called "*Timber Grove;*" in both of which patents, the lands therein mentioned are described by metes and bounds; and then, for the purpose of showing that the tract of land mentioned in the declaration, was part of the land mentioned in said two patents, read to the jury, (subject to all exceptions to the competency or admissibility of said proof, for the purpose aforesaid,) a deed from                to *Ellis Jones,* dated 16th June, 1811; a deed from                to *Charles Willerson* to        *Hill,* dated 10th March 1821; and a deed from said *Hill* and wife to        *Pennington,* dated 1st

August 1834. The will of said *Pennington*, admitted to probate 18th March 1837, authorising *Andrew Hack*, (his executor,) to sell and convey the land therein mentioned, upon a deficiency of the testator's personal estate, to pay his debts; and lastly, the deed of the said *Andrew Hack*, (executor,) to the plaintiff, dated 5th March 1840; all of which deeds and said last will, it is admitted, purport and profess to convey or devise, by certain boundaries therein mentioned, "*Part of Soldiers Delight*," and the whole of "*Timber Grove*," And the plaintiff further proved, that he and those under whom he claims, have been in possession of the lands mentioned in the declaration, for twenty-five years, last past, claiming to hold the same under said patents and deeds aforesaid; and that the land from which the stream of water was diverted by defendant, as alleged in the declaration, has been for twenty-five years reputed and known as "*Soldiers Delight*." And the plaintiff gave evidence to show the diversion of the water by defendant, previous to this suit, so as to prevent it from flowing on said land in its accustomed channel, as it had done before such diversion, and rested his case. Whereupon, the counsel for the defendant, then moved the court to exclude from the consideration of the jury, the patent, deeds and will aforesaid, on the ground, that the land in controversy, is not shown to be the same as that mentioned in said patent, deeds and will. And the defendants counsel accompanied said motion with an admission, that previous to the trial of this cause, and when the plaintiff was about to obtain a warrant of survey for the purpose of locating his pretensions, the defendant agreed that the plaintiff should, on the trial of this cause, introduce evidence for the purpose of locating his title papers and the boundaries thereof, the same as if he had sued out, and proceeded to have a warrant of survey executed in due form of law. But the court, (ARCHER, C. J.,) refused to sustain said motion, and instructed the jury, that said patents, deeds, will, and possession, were competent evidence in this cause, for the purpose of showing title in the plaintiff to the lands in the declaration mentioned. To which refusal and instruction of the court, the defendant excepted.

2ND. EXCEPTION. After the evidence contained in the afore-going bill of exceptions (made part thereof,) had been given, the defendant, to support the issue on his part, gave evidence tending to show, that there was water at all times before this suit, flowing on the land claimed by plaintiff, in its accus-tomed channel, sufficient for plaintiffs use; and the diversion of said stream of water by defendant, was partial, and in no way injured the plaintiff, but benefitted his lands, by preventing the accumulation of water in the low grounds, through which the said stream flowed; and that said diversion took place at a point above plaintiffs lands; and further proved, that such was the situation of that part of plaintiffs lands through which said stream flowed; that the said stream could not be used for the purpose of working machinery on said land, as it had no fall on said land.  The defendant then offered to prove, by parol evidence, that long previous to this suit, and before the diversion of the water, as aforesaid, it was agreed, verbally, between plaintiff and defendant, that the defendant might divert the said stream in the manner now complained of, for the purpose of working a mill about to be erected by defen-dant on his lands, if he, the defendant, would allow plaintiff the use of a certain way or road leading from plaintiffs lands over and through defendants.  And that in pursuance of said agreement, the plaintiff was allowed the use of said way or road, and did use the same; and the defendant went on, at great expense (upwards of $4000,) and labor, with the know-ledge of the plaintiff, and without any objection on his part, but was encouraged by him, to erect and complete his mill as before agreed; and while the same was in operation to supply the same with the stream aforesaid, as agreed, without which the mill could not be used; and that no objection was made by plaintiff to defendant's diverting said stream as aforesaid, until after the completion of said mill, and shortly before bring-ing this suit; and further offered evidence to show, that in case said stream is withdrawn from defendants mill, and wholly restored to its ancient channel, the defendants mill would be rendered useless and of no value; and that before this suit,

and soon after the completion of said mill, the plaintiff demanded a large pecuniary compensation from defendant, for the further use of said stream as aforesaid, or, that said dam should be abated. That the aforegoing facts were offered, to show, that said parol agreement or license, was made by the plaintiff, with a view to entrap the defendant into the erection of the said mill and dam, upon the faith of the said contract and license, and with a design, when the same should be completed, fraudulently to use them as a means of extorting from the defendant, by threatening to deprive him of the use of the water for his mill, unless he would pay what he, the plaintiff, should demand from him. But, upon the objection of the plaintiff's counsel, the court, (ARCHER, C. J.,) refused to permit the above facts to go to the jury for the purpose aforesaid. The defendant excepted, &c.

The verdict and judgment being against the defendant, he appealed to this court.

The cause was argued before DORSEY, CHAMBERS, and SPENCE, J.

By ADDISON for the appellant, and
By RICHARDSON, dep. att. gen., for the appellee.

DORSEY, J., delivered the opinion of this court.

The only question, discussed by the appellant's counsel, and on which the opinion of this court was called for, on the first bill of exceptions was, whether, as the plaintiff had not located the patents and title papers of his land upon plots returned to the court, under a warrant of re-survey issued for that purpose, he could give such patents and title papers in evidence to the jury, and prove, that the grievance complained of, was perpetrated by the defendant in respect of those lands.

In an action relating to lands, if the defendant does not see fit to take defence on warrant, the plaintiff is under no obligation to ask for a warrant to locate his land, or any of the matters in controversy between the parties. Without such plots he may read his title papers in evidence to the jury; prove his

possessions under them, and show by oral or other testimony the injury he complains of; and for which he seeks indemnity.

The case of *Medley vs. Williams, et al., Lessee*, the only case relied on by the appellant as sustaining his position, bears no resemblance to the case now before us. There, defence was taken on warrant, and locations made, and this court held that a title paper, of which there was no location, could not properly be offered in evidence; on the well established principle of correspondence between the pleadings and the proof. But here, no warrant of survey being required by either plaintiff or defendant, no plots or locations could be made in the cause. The county court, therefore, are exempt from the error complained of in the first bill of exceptions.

But the county court, we think, erred in rejecting the testimony offered by the appellant in his second bill of exceptions. The plaintiff having offered the testimony stated in the first bill of exceptions, showing the diversion of the stream from its natural channel, on his land, where it was accustomed to flow; the defendant offered evidence to show, that the diversion of the water complained of, was made on the lands of the defendant, above the lands of the plaintiff, and, that it was rather a benefit than an injury to his lands; and that it was made in virtue of a verbal agreement, entered into by the plaintiff and defendant; by which, it was agreed, that the defendant might make the diversion, as now complained of, for the purpose of working a mill, to be erected by the defendant on his own land; if he, the defendant, would allow the plaintiff the use of a wagon road, from the lands of the plaintiff, over the lands of the defendant. That, in pursuance of the agreement, the plaintiff used the said road; and the defendant, at an expense of upwards of $4000, (encouraged so to do by the plaintiff,) erected the said mill; which mill was of no value, without the said privilege of diverting the water, as aforesaid. That the plaintiff made no objection to the diverting of the stream of water, till shortly after the completion of the mill; when the plaintiff demanded of the defendant a large pecuniary compensation for the use of the water; and that the dam, erected on

the defendant's land for the diversion of the same, should be abated; and, that the aforesaid conduct of the plaintiff was fraudulently designed, for the purpose of extorting money from the defendant. Upon the objection of the plaintiff's counsel, the court refused to permit the aforegoing facts to go to the jury: and in so doing, we think, the county court were clearly in error. If admissible for any purpose, the court was not authorized in rejecting the testimony. In mitigation of damages it was surely admissible; but it was admissible, as evidence, upon other grounds, and for other purposes. For even conceding, what we by no means admit to be true, that the aforementioned agreement did not confer on the defendant a privilege or license, to divert and use the water which the plaintiff could not, at pleasure, countermand; yet, as the defendant had done no act towards diverting the water from its accustomed flow, over the lands of the plaintiff, since the countermand, he could not, by such countermand, be rendered a wrong doer, *ab initio;* or be made responsible in damages for acts done upon his own land, and with the express permission and authority of the plaintiff himself. If ever the maxim, *"volenti non fit injuria,"* was applicable to any case, it must be conclusive on this.

But, regarding this license as countermandable, upon what terms is the plaintiff to be restored to his former rights? Can he require of the defendant to be at the expense, and endure the labor, of removing structures lawfully erected, and by the express authority of the plaintiff? The manifest injustice of such a requisition, is an answer to the question. How, then, is the plaintiff to be restored to rights which he is authorised to demand? By doing justice to the defendants: by tendering to him the expense which he has incurred, under the license. This principle was announced in the case of *Winter vs. Brockwell,* 8 *East,* 308. "Where an action being brought for a private nuisance, by the erection of a sky-light over the defendant's open area; at the trial, the defence set up was, that the area, which belonged to the defendant's house, had been enclosed and covered by a sky-light, in the manner stated, with

the express consent and approbation of the plaintiff, obtained
before the enclosure was made; who, also, gave leave to have
part of the frame work nailed against his wall. But, sometime
after it was finished, the plaintiff objected to it; and gave no-
tice to have it removed. But *Lord Ellenborough* "was of
opinion, that the license given by the plaintiff to erect the sky-
light, having been acted upon by the defendant, and the ex-
pense incurred, could not be recalled, and the defendant made
a wrong-doer: at least, not without putting him in the same
situation as before, by offering to pay all the expense which
had been incurred in consequence of it; and, under this direc-
tion, the defendant obtained a verdict." In this case in *East*,
there was no consideration given for the license; and the nui-
sance, by which the plaintiff suffered from the acts done under
it, was a serious one; and yet, *Lord Ellenborough* subsequent-
ly, on a motion for a new trial, after stating that he had looked
into the books on the point, reiterates the doctrine that he had
before laid down, except as to tender of expense to be made
to the defendant; and states, that in one of the cases to which
he refers, "*Haughton J.* lays down the rule, that a license exe-
cuted is not countermandable; but only when it is executory."

The testimony offered by the appellant in the case before us,
is not only admissible, but is, if believed by the jury, a conclu-
sive bar to the right of action of the appellee. Such was the
decision in the case, (almost identical with the present,) of
*Liggins vs. Inge*, 7 *Bingham*, 682, reported in 20 *Eng. C. L.
Rep.* 290; and to that effect are the cases above referred to by
*Lord Ellenborough.* And *Rezick vs. Kern*, 14 *Serg. & Rawls*,
267. The opinion now given, is not, as was urged in the ar-
gument for the appellee, in conflict with the decision of this
court, in the case of *Hays vs. Richardson*, 1 *Gill & Johns.*
366. There the right, claimed under an instrument of writing,
not acknowledged and recorded, agreeably to the registry laws
of the State, was a right of way over the lands of the person
intending to grant it, and was an use, thereof, to the extent of
the right asserted; and came within the very terms of the act
of Assembly for the enrolling of conveyances, viz: that "no

manors, lands, tenements, or hereditaments whatever, within this province, shall pass, alter, or change from one to another, whereby the estate of inheritance or freehold, or any estate for above seven years, shall be made or take effect in any person or persons, or any *use* thereof to be made, &c.," unless the conveyance be executed, acknowledged, and recorded, in the manner therein prescribed. But, in the case before us, the appellee passed to the appellant no estate or interest in his land, or any use thereof. He simply agreed to abandon the use of the water, in the manner in which it had been accustomed to flow on his land. And the moment the abandonment was consummated by the execution of the license, the right of the appellee to the use of the water, as it formerly flowed in its natural channel, became extinct; it was no longer appurtenant to his land; and he, thenceforth, held it as if no such privilege or appurtenance had ever belonged to it. And this view of the subject, in no wise, contravenes the prominent object of our enrolment laws, the protection of purchasers. When a purchaser views the land he desires to acquire, he sees it divested of its water right, and contracts for it accordingly: so that no injustice is done him.

We are not to be understood in what we have said, as countenancing the idea, that a written grant, unacknowledged and unenrolled, of a power similar to that conferred by the license in this case, but which power had not been executed, would be operative and effectual to bar a subsequent *bona fide* purchaser, for a valuable consideration without notice, claiming the water right naturally incident to the lands he had purchased. To interpose such a bar, in such a case, we think the same conformity to the provisions of our *registry laws* is necessary, that would be required if land were the subject of the conveyance.

The doctrine, insisted on in the argument of the counsel for the appellant, that an oral contract, of no validity under the statute of frauds, would obtain such validity, and would enable a party to maintain an action upon it at law, if he could prove that the opposite party perpetrated, or designed to per-

petrate, a fraud, when he entered into the contract. A repli-
cation, charging such fraud to the defendant, in an action at
law, instituted on such a contract, would be no answer to the
defendant's plea of the statute of frauds. If a party on whom
such a fraud has been committed, has relief any where, it must
be sought in a court of equity; at law it cannot be obtained.

Assenting to the opinion of the court, on the first bill of
exceptions, but, dissenting from its refusal to admit, in evi-
dence, the testimony offered by the appellant in the second bill
of exceptions, we reverse its judgment.

JUDGMENT REVERSED AND PROCEDENDO ORDERED.

CHAMBERS, J., dissented in part.

I concur in the opinion expressed by my Brother *Dorsey*, so
far as that opinion relates to the case, now for the judgment
of this court. To so much of it as relates to the idea, "that
a written grant, unacknowledged and unenrolled, of a power
similar to that conferred by the license, in this case, &c." I
beg leave to be considered as expressing, neither concurrence
or dissent. That question is not involved in the cause now
before us, has not been at all argued by counsel, certainly has
not been investigated by me; and, whatever be the law appli-
cable to it, this case will, in no respects, be affected by it.

Considering it quite sufficient to examine and decide ques-
tions which are brought before us, I am unwilling to prejudge
others; not because of any supposed difficulty in the particu-
lar case, but on account of the principle.