Vogler *vs.* Geiss.

(Decided 17th June, 1879.)

---

## MATHIAS VOGLER and CATHARINE, his Wife *vs.* JOHN T. GEISS.

*What is construed as an Abandonment of a Right of Way or other Easement in another's Land—View of Property by Purchaser.*

A party entitled to a right of way or other mere easement in the land of another, may abandon and extinguish such right by acts *in pais*, and without deed or other writing. The act or acts relied on, however, to effect such result, must be of decisive character; and while a mere declaration of an intention to abandon will not alone be sufficient, the question, whether the act of the party entitled to the easement amounts to an abandonment or not, depends upon the intention with which it was done, and that is a subject for the consideration of the jury. A cesser of the use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time.

If the party entitled to a right of way over the land of another agrees or consents that the owner, or other person interested in such servient tenement, shall erect a house or a permanent wall across the

way, which would necessarily obstruct the enjoyment of the easement, and such building or wall is erected accordingly, that would certainly amount to proof of an abandonment of the easement. Such an obstruction being permanent in its nature, would, of necessity, so far as the party agreeing to the erection is concerned, terminate the enjoyment of the easement; and thus extinguish the right itself. But if the party be authorized to raise the obstructions complained of by mere parol license, and such license be executed before revocation, and the obstructions be only temporary in duration or partial in effect; the easement is only suspended or modified for the time of the duration of the obstructions raised in pursuance of such license; and the license being only for a specific act, and being, except to the extent that it has been actually executed, countermandable, the licensee cannot erect another obstruction of the same or of a different kind without a new license; and consequently, such temporary or partial obstructions do not destroy or work an extinguishment of the right. In such case, after the removal of the obstructions, the right to use the easement as formerly, is fully restored. But a party having once given his free consent to forego the use of the easement, either temporarily or permanently, and suffered other persons to act upon the faith of that agreement or consent, and to incur expense in doing the very act to which his consent was given, it is then too late for him or those claiming under him, to retract such consent, or to throw on those relying upon his good faith, the burthen of restoring things to their former state and condition.

If it be objected, that the purchasers looking alone at the muniments of title, are liable to be misled as to what they purchase, or as to the advantages and appurtenances of the property, it may be answered, that when a purchaser views the property he desires to acquire, he sees its real condition and surroundings, and he contracts for it accordingly.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., BOWIE, MILLER and ALVEY, J.

*Frederick C. Cook,* for the appellants.

Vogler *vs.* Geiss.

*Thomas A. Hopkins,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

This was an action on the case for obstructing an alley, the use of which was appurtenant to the premises of the plaintiff. At the trial below, the plaintiff gave evidence tending to prove that he and the defendants were leasehold owners of adjoining lots on Granby street, in the City of Baltimore, and that such lots run back to a seven foot alley running parallel with Granby street, and from which alley there is a cross alley running along and binding on the east side of the defendant's lot to the intersection of Granby street. That both these alleys were, and have been since the laying out of the lots, for the common use of the two lots, and that the plaintiff acquired the right to such use under the deed for the lot now occupied by him. He then gave evidence to show that at the time he purchased his lot there were certain obstructions in the cross alley running along the east side of the defendants' lot, placed there by the defendants; that such obstructions consisted of a board fence, over six feet high, across the mouth of the alley at the entrance from Granby street, with a gate fitted therein, fastened with bolt and latch worked on the inside; also a pair of steps leading into the alley from a door in defendants' house, and a door and gate leading out from the defendants' house and yard, and swinging over the alley; and also an excavation affording an entrance to a cellar, and a cellar door opening in the alley. The defendants then offered to prove by competent witnesses, that the obstructions just described were erected by the defendants, under a verbal agreement between the defendants and the former owner of the leasehold interest or estate in the plaintiff's lot, to which the use of the alleys were appurtenant; that such obstructions were erected by and with the permission and consent of one Horzman, under and from whom the plain-

tiff derived title to his lot. To the admissibility of this evidence the plaintiff objected, and the Court sustained the objection and excluded the evidence from the jury. This ruling presents the only question made upon the record brought into this Court.

It is now very well settled, by authorities of the highest character, that a party entitled to a right of way or other mere easement in the land of another may abandon and extinguish such right by acts *in pais,* and without deed or other writing. The act or acts relied on, however, to effect such result, must be of a decisive character; and while a mere declaration of an intention to abandon will not alone be sufficient, the question, whether the act of the party entitled to the easement amounts to an abandonment or not, depends upon the intention with which it was done, and that is a subject for the consideration of the jury. A cesser of the use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time. *Glenn vs. Davis,* 35 *Md.,* 208, 217; *Reg vs. Chorley,* 12 *Ad. & El.* (*N. S.,*) 515; *Moore vs. Rawson,* 3 *B. & Cr.,* 332; *Liggins vs. Inge,* 7 *Bing.,* 682; *Pope vs. Devereux,* 5 *Gray,* 409. If the party entitled to a right of way over the land of another agrees or consents that the owner, or other person interested in such servient tenement, shall erect a house or a permanent wall across the way, which would necessarily obstruct the enjoyment of the easement, and such building or wall is erected accordingly, that would certainly amount to proof of an abandonment of the easement. Such an obstruction, being permanent in its nature would, of necessity, so far as the party agreeing to the erection is concerned, terminate the enjoyment of the easement; and thus extinguish the right itself. But if the party be authorized to raise the obstructions complained of by mere parol license, and such license be executed before revoca-

tion, and the obstructions be only temporary in duration or partial in effect, the easement is only suspended or modified for the time of the duration of the obstructions raised in pursuance of such license; and the license being only for a specific act, and being, except to the extent that it has been actually executed, countermandable, the licensee cannot erect another obstruction of the same, or of a different kind, without a new license; and consequently, such temporary or partial obstructions do not destroy or work an extinguishment of the right. In such case, after the removal of the obstructions, the right to use the easement as formerly is fully restored. 3 *Kent Com.,* 449. But a party having once given his free consent to forego the use of the easement, either temporarily or permanently, and suffered other persons to act upon the faith of that agreement or consent, and to incur expense in doing the very act to which his consent was given, it is then too late for him, or those claiming under him, to retract such consent, or to throw on those relying upon his good faith the burthen of restoring things to their former state and condition. This is the just and equitable principle now firmly established; and it is applied as well in Courts of law as in Courts of equity. *Addison vs. Hack,* 2 *Gill,* 221, 228–9; *Winter vs. Brockwell,* 8 *East,* 308; *Liggins vs. Inge,* 7 *Bing.,* 682; *Dyer vs. Sanford,* 9 *Metc.,* 395; *Morse vs. Copeland,* 2 *Gray,* 304; *Curtis vs. Noonan,* 10 *Allen,* 406.

If it be objected that purchasers, looking alone at the muniments of title, are liable to be misled as to what they purchase, or as to the advantages and appurtenances of the property, it may be answered, as in other cases it has been where that same objection has been made, that when a purchaser views the property he desires to acquire he sees its real condition and surroundings, and he contracts for it accordingly. *Addison vs. Hack,* 2 *Gill,* 229; *Corning vs. Gould,* 16 *Wend.,* 529, 542–3.

In view of these well established principles, we think there was error in the ruling of the Court below in excluding the evidence offered by the defendants. It was, at any rate admissible in mitigation of damages; and we think it also admissible in bar of the action. 2 *Gill*, 227. Of course, the license or agreement of the tenant of the leasehold estate will not bind or affect the estate in reversion. It can only bind the party granting the license or making the agreement, and those claiming under and through him, in respect to the leasehold estate. *Glenn vs. Davis*, 35 *Md.*, 208, 215.

Entertaining these views, we must reverse the judgment and award a new trial.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 17th June, 1879.)