# SUSAN P. KNOTTS *vs.* THE SUMMIT PARK COMPANY.

*Right of Way—Creation—When Appurtenant—Nonuser and Abandonment—Evidence.*

The fact that there would have been a way of necessity in the absence of a grant does not deprive a granted right of way of any of its incidents as a grant.                        p. 238

Words of limitation are not necessary to create a perpetual easement by reservation where, in the absence of any provision in the deed, an easement of necessity would have been implied.
p. 238

When it appears by a fair interpretation of the words of a grant that it was the intent to create or reserve a right in the nature of a servitude or easement, in the property granted, for the benefit of other land owned by the grantor, and originally forming, with the land conveyed, one parcel, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed to the grantee, and the right and burden will respectively pass to and be binding on subsequent grantees.   p. 239

Where the owner of land conveys part thereof, leaving for the remaining part no outlet except that reserved in the deed of conveyance, the reservation must be inferred to be of an easement appurtenant to the land retained.                        p. 239

A right of way acquired by grant cannot be lost by mere nonuser for however long a time, unless such nonuser is accompanied by some act indicating clearly and unequivocally an intention to abandon it.                        p. 240

While one entitled to a right of way or other mere easement in the land of another may abandon and extinguish such right by acts *in pais,* the act or acts relied on to effect such result must be of a decisive character.                        p. 240

Whether an act amounts to an abandonment of an easement depends on the intention with which it was done.        p. 240

A cesser of the use, coupled with an act clearly indicative of an intention to abandon the right, has the same effect as an express release of the easement, without any reference whatever to time. p. 241

That the owners of land admitted that they knew that there had been a right of way across it for a long time, and did not imagine that it would be used any more, was not conclusive of a recognition of the right of way as an existing easement. p. 242

The necessarily increased burden upon the servient estate, brought about by the development of the entire tract of which the dominant tenement formed a small part, and the opening of roads through such tract, giving easy access to the right of way in question to all lot holders, including those outside the dominant estate, many times the number of those in said estate, *held* to have worked an abandonment of the right of way.

pp. 242, 243

*Decided June 21st, 1924.*

Appeal from the Circuit Court for Baltimore County (Harlan, J.).

Bill by the Summit Park Company against Susan P. Knotts. From a decree for plaintiff, defendant appeals. Reversed.

The cause was argued before Pattison, Urner, Adkins, Offutt, and Bond, JJ.

*J. V. Best* and *R. E. Kanode,* for the appellant.

*John D. Nock,* with whom were *Benson, Nock & Rowe* on the brief, for the appellee.

Adkins, J., delivered the opinion of the Court.

The appellant and appellee in this case are owners of adjoining parcels of land in Baltimore County, both of which were formerly owned by Celestia A. Ferguson and used by her as one tract. It contained about 6½ acres, with a frontage of 4 9/10 perches on the Frederick Turnpike Road and

a greater width at the rear. By deed dated October 11th, 1871, she conveyed to Catherine Luckett that part of her lot fronting on the turnpike and running back about 792 feet, containing about 1¾ acres. The deed contained the following reservation:

> "Subject, however, to a right of carriage and footway through the above described property on the east side thereof from the Frederick Turnpike southerly to the remaining portion of the property now held by said Celestia A. Ferguson."

This lot is now owned by the appellant. On May 4th, 1872, Celestia A. Ferguson conveyed the remainder of the entire tract to Daniel Coakley, the deed containing the following provision:

> "It is further understood and by these presents intended to be conveyed to said Coakley a right of way thirty feet wide (30) leading from the Frederick Turnpike Road as an entrance to the land bought by and hereby intended to be conveyed to him."

The latter parcel was, on July 29th, 1886, conveyed by Brown and wife, the then owners, to James A. Gary and added to a tract of about sixty acres already owned by him and occupied as a country residence.

On October 10th, 1919, James A. Gary conveyed this estate of sixty-five acres to Martin Healy and others, who on the same day conveyed it to appellee.

The bill of complaint, filed on July 2nd, 1923, by appellee against the appellant, sets up a right to the use of the carriage and foot way reserved in the deed from Celestia A. Ferguson to Catherine Luckett, which on the plat filed with the bill is designated as "thirty-foot right of way." It alleges that this right was never questioned by any one until some time in the early part of December, 1922, when the plaintiff received notice from defendant's attorney that she questioned plaintiff's right to the use of said road or right of way, and the plaintiff was advised to discontinue the use of same, but plaintiff avers that for two and a half years after acquiring

title to said property it openly used said right of way as a
matter of right, and their predecessors in title for fifty years
or more have claimed the right to and have used same with-
out question; that defendant has placed obstructions over
said right of way for the purpose of preventing plaintiff from
using same; and has thereby greatly interfered with the
plaintiff in the enjoyment, operation and plan of develop-
ment of its land and has and will continue to cause it great
loss, injury and damage for which adequate compensation
cannot be obtained in an action at law; and that unless such
interference and obstruction is restrained by a court of
equity they will be ruinous and irreparable and will seriously
impair the enjoyment and use of plaintiff's property, and
greatly depreciate the value thereof.

The prayer of the bill is: (1) That defendant may be
required to remove obstructions and restrained from inter-
fering in any manner with the use of said road-way by
plaintiff. (2) For other and further relief.

It thus appears that the plaintiff's claim for relief is as
to a right of way thirty feet wide, and for the benefit of its
entire development.

The grounds of defense, as claimed, are: (1) The reser-
vation in the deed from Ferguson to Luckett is only a
designation by the parties to the deed of the location of
a way of necessity. (2) It was personal to the grantor and
as such terminated with the alienation of the dominant tene-
ment, or with the death of grantor. (3) Abandonment by
Gary, a former owner of the dominant tenement. (4)
Changes in the dominant tenement involving an increased
use of the easement not contemplated in its creation.

The trial court, in an able opinion, held that the right of
way created by the reservation in the deed from Ferguson to
Luckett is a subsisting easement appurtenant to the land
conveyed by Brown and wife to Gary; but that the rights
of the respective parties are fixed by the terms of the deed
creating the right of way and not affected by a later deed
of the owner of the dominant estate giving a different de-
scription, and consequently the description of the right of

way in the deed from Ferguson to Coakley as being thirty feet in width is nugatory; that its width depends upon what the parties had in mind when the deed was executed and delivered; that the way must be a reasonable one and of sufficient width to be conveniently used, but that there is no evidence in the case from which the court could determine what its width should be; that plaintiff's claim is much too broad; that the way is for the use of the land reserved by the grantor, and every person owning a portion of it is entitled to the use of the way for the benefit of his land, but not for the benefit of any other land that he may own, whether contiguous or not, and that one attempting to use this right of way for any purpose whatever except for the benefit of the land conveyed by Brown and wife to Gary is a trespasser; that the claim of the plaintiff to the use of this right of way as a road in the development of the Gary tract cannot be sustained.

The decree is: that plaintiff, its successors and assigns, are entitled to the right of a carriage and footway of sufficient width to be conveniently used, through the property of defendant along the east side thereof from the Frederick Turnpike southerly to that part of plaintiff's property formerly owned by Celestia A. Ferguson, said right of way being for the use and benefit of said land now owned by the plaintiff and formerly owned by the said Celestia A. Ferguson; that defendant is enjoined from obstructing or in any manner interfering with the use and enjoyment of said right of way as aforesaid; that defendant is required and ordered to remove any and all obstructions from said right of way.

From that decree this appeal was taken.

We do not find any support for defendant's first proposition. The fact that there would have been a way of necessity in the absence of a grant, does not deprive a granted right of way of any of its incidents as a grant.

As to the second proposition: Words of limitation are not necessary to create a perpetual easement by reservation where, in the absence of any provision in the deed, an ease-

ment by necessity would have been implied.   9 *R. C. L.,* page 753.

"When it appears by a fair interpretation of the words of a grant that it was the intent of the parties to create or reserve a right in the nature of a servitude or easement, in the property granted, for the benefit of the other land owned by the grantor, and originally forming, with the land conveyed, one parcel, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed to the grantee, and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective lots of land." *Halle* v. *Newbold,* 69 Md. 270; *Douglass* v. *Riggin,* 123 Md. 18; 9 *R. C. L.* 741.

It is impossible to infer that the owner of land who conveys part of it, leaving for the remaining part no outlet except that reserved in the deed of the part sold, intends the reservation to be other than an easement appurtenant to the land retained.   We therefore hold that the easement created by the deed from Ferguson to Luckett was appurtenant to the land retained by the grantor.   The cases cited by appellant are not inconsistent with this conclusion.   In none of those cases was the easement vital to the use of the property.

The third proposition is that James A. Gary abandoned the right of way.   This contention is based on the fact that, about eighteen years before the conveyance by him to the representatives of appellee, he erected a fence without a gate at the southernmost end of the right of way and thereby rendered its use, for a carriage way at least, impossible, and for any other purpose, impracticable.   It is urged by appellant that this act, in connection with the practical non-user of the way for many years prior thereto, evidenced an intention to abandon the easement.

There is a dispute as to just where this fence was located, whether on the division line or wholly on Gary's property; but the weight of the testimony supports plaintiff's contention that it was two or three feet south of the old fence, which was not disturbed.   The old one was then very dilapidated, soon disappeared, and was never rebuilt.   A survey made

during the time of taking testimony indicates that the fence built by Gary was on about the true division line. It was also in line with the rear fence of the adjoining property. The only evidence as to the purpose of the new fence was that it was intended to prevent Gary's cattle from straying out on the pike through the old gate.

Some years before the conveyance by Brown and wife to Gary the buildings were burned. Gary cleared up the ground and used the land for pasture. Thereafter there was little or no occasion to use the right of way. Gary's mansion and other buildings belonging to his estate were to the westward, far removed from this entrance, and had their own long established roads leading to the Frederick Turnpike.

Some years before the new fence was built an employee of the then owner of appellant's lot built a stable on the rear end of that lot extending beyond the gate post of the old gate and just as close to the east fence as he could go and get the horse in and out of the stable. No one ever complained about the stable being there.

There is some evidence of sporadic use of the right of way after the fire, but the use was not of such a character as to indicate anything different from the passing by one neighbor over the land of another at infrequent intervals without the claim of any right. There is nothing to show that even this had anything to do with the use or enjoyment of the dominant estate.

But where a right of way is acquired by grant, as in this case, it cannot be lost by mere non-user, for however long a time, unless such non-user is accompanied by some act indicating clearly and unequivocally an intention of the grantee to abandon it. 19 *Corpus Juris,* p. 942; 9 *R. C. L.* p. 810; 22 *L. R. A.* (N. S.) p. 881, notes.

It is well settled, however, that a party entitled to a right of way or other mere easement in the land of another may abandon and extinguish such right by acts in *pais.* The act or acts relied on, however, to effect such result, must be of a decisive character, and whether the act amounts to an abandonment or not depends upon the intention with which it was

done.   A cesser of the use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time. *Vogler* v. *Geiss,* 51 Md. 407 ; *Stewart* v. *May,* 119 Md. 10.

In *Vogler* v. *Geiss, supra,* there is a distinction suggested between permitting the owner of the servient estate to erect a house or a permanent wall across the right of way, and permitting him to erect obstructions only temporary in duration; and it is said such temporary obstructions do not destroy or work an extinguishment of the right.   For this 3 *Kent's Comm.* 449 is cited.   On reference to this citation it is found that that learned author again distinguishes between the effect of permission by the dominant owner to the servient owner to erect an obstruction, and the erection of such obstruction by the dominant owner himself.   As to the latter, in the same section, he says : "If the act which prevents the servitude be incompatible with the nature or exercise of it, and be by the party to whom the servitude is due, it is sufficient to extinguish it ; and if it be extinguished for a moment, it is gone forever."

The weight of authority seems to be against the proposition that the *mere* erection of a fence, which can be easily removed, across a right of way by either the dominant or servient owner will, of itself, destroy the easement.   9 *R. C. L.* p. 813, sec. 69 ; 19 *C. J.* p. 950, sec. 167 ; 22 *L. R. A.* (N. S.) 880, notes to Trimble v. King (Ky.) ; 42 *L. R. A.* (N. S.) 741, notes to Adams v. Hodgkins (Me).

It seems to be generally agreed that in this matter no one case can be authority for another.   Time is not a necessary element ; it is not the duration of the non-user, but the nature of the acts done or permitted, and the intention which the one or the other indicates, that are important.   9 *R. C. L.* p. 812, sec. 68.

The question here is, Does the practical non-use of the right of way for more than thirty years, the erection of a stable on it without protest or objection by an employee of the servient owner, the erection by the dominant owner of

the fence, and its continuance for eighteen years and to the end of his ownership, all combined, show such an intent to abandon the easement as to work its extinction? In this connection it is important to remember that the fence had been erected for three years at the time of the purchase of the servient estate by the husband of appellant under whose will she acquired the property.

After all it comes down to the intent of the dominant owner as evidenced by his acts, and how far the purchaser of the servient estate may be presumed to have relied on such acts, and whether he was justified in assuming from them and from all the circumstances that there had been an abandonment.

There is some testimony about an interview between several officers of the company and the family of Mrs. Knotts, *after* the company had agreed to buy the property, in reference to the right of way, in which, it is stated, the members of the family admitted the company had the right of way. One witness said: "They were aware of it and acquiesced in it, so far as I can see." He said: "They weren't tickled of it. They didn't like the idea of the road going down there. Q. What did they say in words? A. They said they knew it had been there a long time and didn't imagine it would be used any more. They said further it had been called to their attention when they bought the place."

This is not conclusive of a recognition of the right of way as an *existing* easement. Of course they knew from the deeds that it had *once* existed.

The decision of the question of abandonment would not be free from difficulty if it had to rest on the facts as they were at the time of the sale by Gary to appellee.

But if there had not then been an abandonment of the easement, the necessarily increased burden upon the servient estate brought about by the development of the entire tract, of which the dominant tenement formed a small part, worked an abandonment. By reference to the plat filed in the case, it will be seen that by the opening of the roads running north and south through other parts of the tract and connecting

them with the avenue running east and west through the
entire tract, easy access was given to the old right of way
to all lot holders, including those outside of the dominant
estate, who are many times the number of those in said
estate.

It is not a satisfactory answer to say that the use of this
right of way must be only for the benefit of the lots within
the dominant estate.  A condition has been created by the act
of appellee which makes it impossible, as a practical proposi-
tion, for appellant to confine the use to such lots.  *Tiffany's
Real Property* (1903 ed.), p. 733; 9 *R. C. L.* p. 814, sec. 70.

We are not impressed by the claim of estoppel set up by
appellee.  If it can be found from any testimony in the case
that appellant admitted there was an *existing* easement at the
time of the conversation between them, there is certainly
nothing from which it can be inferred that she acquiesced in,
or consented to, an increased burden.

> *Decree reversed and bill dismissed, with costs to
> appellant.*