CITYCO REALTY COMPANY *v.* PHILADELPHIA,
BALTIMORE & WASHINGTON RAILROAD
COMPANY, ET AL.

[No. 53, October Term, 1929.]

*Decided January 9th, 1930.*

The cause was argued before BOND, C. J., PATTISON.
URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*John L. G. Lee,* for the appellant.

*H. Courtenay Jenifer,* with whom were *Thomas M. Jenifer* and *Bernard Carter & Sons* on the brief, for the appellees.

DIGGES, J., delivered the opinion of the Court.

The bill in this case was filed by the appellant in the Circuit Court for Baltimore County, praying for a mandatory injunction compelling the appellees to provide and maintain a suitable crossing both for pedestrian and vehicular traffic over the right of way of the appellees, in such location as the court may determine to be reasonable, at the expense of the appellees or the appellant, as the court may deem equitable in the premises. The appeal is from a decree denying the relief and dismissing the bill.

Section 18 of chapter 288 of the Acts of 1831, which chapter was the charter of the Baltimore & Port Deposit Railroad Company, provided that, whenever in the construction of said road or roads it shall be necessary to pass through the land of any individual, it shall be the duty of the president and directors of the said company to provide for such individual proper and necessary wagon-ways across said road or roads, from one part of his land to the other. The appellees are the successors in title of the Baltimore and Port Deposit Railroad Company, entitled to the privileges and advantages set forth in its charter, and also have imposed upon them the duties and obligations contained in that charter. In June, 1836, the title to the property in question was in Roswell L. Colt *et al.,* trustees of the estate of Robert Oliver, then deceased, at which time the said trustees by deed conveyed to that company the right of way through the property, then occupied and cultivated as a farm and containing 194 acres. This farm was located in Baltimore County, bordering on the Gunpowder and Bird Rivers. The right of way conveyed by this deed to the railroad company extends generally in a northeasterly direction, and now, with later additions, constitutes a portion of the main line of the Pennsylvania Rail-

road from Baltimore to Wilmington, Philadelphia and New York. The original right of way divided this farm in two portions, that lying on the west of the railroad right of way containing about 45 acres, and that on the east about 150 acres. The dwelling house, which burned in 1912, was located on the east side of and near the railroad right of way, some 300 or 400 yards from the railroad bridge over the Gunpowder River. The barn used in connection with the farm was located on the 45-acre tract lying on the west side of the railroad, and was nearly opposite the dwelling house. Although the record does not indicate definitely, it is apparent that there was provided and maintained for many years a farm crossing at grade over the railroad right of way and tracks at a point not far from the dwelling house, for the use of the farm in going to and from the portions which lay on different sides of the right of way. The testimony shows that the last person who cultivated the land on both sides of the railroad as a farm was a Mr. Porter, who left it in 1900, after which time the dwelling house was allowed to deteriorate, and the land, especially the forty-five acres on the west side of the railroad, to become grown up in bushes and trees to the size of eight or ten inches in diameter; that, from the time of Porter's leaving the farm, the crossing was not used by any one living upon the property, and only at infrequent intervals without claim of right by some person desiring to go to the river for fishing or shooting. Prior to 1912 the railroad bridge over the Gunpowder River was a wooden structure, at which time the railroad erected in its place a concrete bridge, relocated its tracks in the approach to the new bridge, and elevated them at the point where the old farm crossing was situated eight or ten feet, the planks which had been laid alongside of the rails to provide for the farm crossing being removed; and it was impossible from that time to cross the railroad at that point. The testimony further shows that it would have been necessary for any one with a team and wagon, attempting to use the old crossing from 1900 to 1912, to have driven over bushes and trees of a considerable size on the west side of the right of way. About the

time of the construction of the concrete bridge by the railroad company, in consideration of $5,000 paid Sarah A. Knight, the then owner of the farm, it acquired by deed of August 22nd, 1912, a strip of land parallel to its old right of way and extending to the low-water mark of the Gunpowder River; and on March 21st, 1921, by deed from the executors of Sarah A. Knight, deceased, the railroad company acquired an additional strip of land, containing about three and one-half acres, also contiguous to and parallel with its original right of way. These deeds conveyed portions of the farm along the original right of way of the railroad at the point of the old farm crossing, and neither of them reserved a right of way over the land thus conveyed from the land retained to the farm crossing. By deed dated the 27th day of November, 1922, the executors of Sarah A. Knight conveyed the remaining portion of the farm lying on both sides of the railroad to the appellant, which deed, after describing the property, contained the following: "Excepting from the land included in this description the right of way and tracks of the Philadelphia, Baltimore and Washington Railroad and the right of way, with the use in common, of a road leading to Harewood Station."

After the purchase of this property by the appellant, it subdivided all of the forty-five acres lying on the west of the railroad and also a portion of that lying on the east side. The record shows that the subdivided portion contains approximately 700 lots, about one-half of which are located on the west side of the railroad; that 1,260 feet from the subdivision on the west side there is located a railroad station known as Harewood Station, at which there is a crossing; that in order to get from the subdivision on the west of the railroad to this crossing, it was necessary to pass over the land of Henry Cobb, Inc., for the said distance of 1,260 feet; that by an agreement entered into on the 22nd of September, 1924, between the appellant and Henry Cobb, Inc., duly executed by both parties and recorded, the appellant was conveyed the right to use in common a road thirty

feet wide extending from its subdivision on the west of the railroad to Harewood Station, and that the appellant, since the execution and recording of said agreement, had conveyed to various parties lots in the subdivision on the west of the railroad, described as abutting on this thirty foot right of way, conveyed by the said agreement and designated, on the plat by which the said lots were sold, as Twin River Avenue.

At the time of the taking of testimony and the decree in this case, we therefore have this situation: The appellant owning a real estate subdivision containing 700 lots, with approximately the same number on each side of the railroad, with a legal right to use the thirty foot road known as Twin River Avenue for the benefit of the subdivision on the west side of the railroad, and leading to the crossing at Harewood Station, and then on the east, by way of Eastern Avenue, to Baltimore, with the old farm crossing practically out of use since 1900, with the railroad company owning in fee simple, by deeds without reservation, strips of land lying between that now owned by the appellant and what was formerly a farm crossing. The question therefore is: Under such circumstances, is the appellant entitled to a mandatory injunction compelling the railroad company to reconstruct and maintain the farm crossing, not only over its original right of way, but also over the strips acquired by the subsequent deeds containing no reservations whatever? The chancellor denied the relief, and we find no error in that action.

There can be no doubt that the Baltimore and Port Deposit Railroad Company, under its charter, was bound to construct and maintain, when demanded, a farm crossing to connect the two portions into which this farm was separated by the right of way, and that such obligation was a continuing one on the part of the railroad company and its successors. *Tolbert v. Phila., B. & W. R. Co.*, 126 Md. 569. This obligation the railroad company met when the old farm crossing was established; and, if the crossing had not been legally aban-

doned, it would still be under the obligation to maintain it. We think, however, that the record abundantly discloses that this crossing was abandoned long before the appellant acquired the property. It was not used after 1900, more than twenty years before such acquisition; and while nonuser for that length of time, in itself, does not establish legal abandonment of an easement, yet such nonuser, accompanied by positive acts of the owner of the dominant tenement indicating such purpose, will constitute legal abandonment.

In *Knotts v. Summit Park Co.,* 146 Md. 234, speaking through Judge Adkins, we said: "But where a right of way is acquired by grant, as in this case, it cannot be lost by mere nonuser, for however long a time, unless such nonuser is accompanied by some act indicating clearly and unequivocally an intention of the grantee to abandon it. 19 *C. J.* 942; 9 *R. C. L.* 810; 22 *L. R. A.* (N. S.) 881, notes. It is well settled, however, that a party entitled to a right of way or other mere easement in the land of another may abandon and extinguish such right by acts *in pais*. The act or acts relied on, however, to effect such result, must be of a decisive character, and whether the act amounts to an abandonment or not depends upon the intention with which it was done. A cesser of the use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time. *Vogler v. Geiss,* 51 Md. 407; *Stewart v. May,* 119 Md. 10. * * * It seems to be generally agreed that in this matter no one case can be authority for another. Time is not a necessary element; it is not the duration of the nonuser, but the nature of the acts done or permitted, and the intention which the one or the other indicates, that are important. 9 *R. C. L.* 812, sec. 68. The question here is: Does the practical nonuse of the right of way for more than thirty years, the erection of a stable on it without protest or objection by an employee of the servient owner, the erection by the dominant owner of the fence, and its continuance for eighteen years and to the end of his ownership, all combined, show such an intent to abandon the easement as to work its

extinction? In this connection it is important to remember that the fence had been erected for three years at the time of the purchase of the servient estate by the husband of the appellant under whose will she acquired the property. After all, it comes down to the intent of the dominant owner, as evidenced by his acts, and how far the purchaser of the servient estate may be presumed to have relied on such acts, and whether he was justified in assuming from them, and from all the circumstances, that there had been an abandonment."

In 3 *Kent's Comm.*, 449, cited in the case of *Vogler v. Geiss, supra,* the author states: "If the act which prevents the servitude be incompatible with the nature or exercise of it, and be by the party to whom the servitude is due, it is sufficient to extinguish it; and if it be extinguished for a moment, it is gone forever." In 1 *Tiffany, Real Prop.* (1st Ed.), sec. 330, p. 735, the learned author says: "There are many cases to the effect that an easement is extinguished by abandonment thereof, by which is meant that a nonuser thereof, together with other circumstances, may, as showing an intention to make no further use of it, terminate the easement. The real principle involved in these cases seems to be that the existence of an express release of an easement may be inferred from circumstances."

In the case of *Shipp v. Bell Rwy. Co.,* 133 Tenn. 238, in which the facts are analogous to the case under consideration, the court said: "The complainant is precluded, however, in this case by its peculiar facts. When the original strip of land was conveyed to the railroad company, undoubtedly the right to a crossing was reserved in the property owners by the terms of this statute, and possibly a way of necessity arose independent of the statute. However, when the property owner has conveyed through the realty company to the railway company a strip of land on either side of said right of way in fee, of a sufficient amount of land to make a total strip of 206 feet wide, such a conveyance being by warranty and without any reservation of such crossing, we hold he is therefore estopped by the terms of his deed to claim it."

It seems clear from these authorities that the act of Sarah A. Knight and her executors in conveying strips of land adjoining the original right of way of the railroad company, in fee simple without any reservation, coupled with a long nonuse before such conveyance, indicates such a purpose to abandon as works an extinguishment of the easement created by the erection of the farm crossing under the provisions of the charter of the Baltimore and Port Deposit Railroad Company. There can be no new right of way of necessity at this time, for the reasons heretofore stated, that the appellant has acquired and now possesses a right of way for the use of the owners of the property on the west side of the railroad, over the lands of Henry Cobb, Inc., to the crossing at Harewood Station. This latter way may be slightly longer and not as efficient for the purposes of the appellant, but that makes no difference when we are considering a right of way of necessity. A way of necessity cannot be established where other reasonable and adequate rights of way exist, and the establishment of which would impose great burden and expense upon the servient tenement. *Tiffany, Real Prop.* (2d Ed.), vol. 2, pp. 1304, 1363, 1368; *Zimmerman v. Cockey,* 118 Md. 491; *Gulick v. Fisher,* 92 Md. 353; 21 R. C. L. 1214-17; *Mitchell v. Seipel,* 53 Md. 251.

*Decree affirmed, with costs to the appellee.*